ESTATE OF JAMES W. FLANAGAN, DECEASED, J. ALBERT DeCAMP, HENRY F. PELKEY AND CITY BANK FARMERS TRUST COMPANY, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE. RESPONDENT.

Docket No. 35722. Promulgated September 30, 1952.

*Lemuel Skidmore, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Deficiencies in income tax for 1944 and 1945 in the respective amounts of $19,124.98 and $8,218.26 are in controversy.

All of the facts have been stipulated and they are hereby so found. The returns of petitioner's decedent (sometimes herein called "decedent") were filed with the collector for the second district of New York.

The factual background, the question involved and the contentions of the parties are well summarized in respondent's brief:

James W. Flanagan, who died on July 24, 1950, and is referred to herein as the decedent, was a citizen of the United States at all times mentioned in this brief. Decedent was an employee of the Standard Oil Co. (N. J.) from January 1, 1912 to 1919, and of Andian National Corporation, Limited, sometimes referred to herein as "Andian", from 1919 until the date of his retirement in October, 1942. From January 1, 1926 until October, 1942, decedent was a bona fide resident of Canada. When he retired in 1942, at the age of 70 years, decedent changed his residence to the United States and continued a resident of the United States until the date of his death.

Upon his retirement in 1942 decedent became a beneficiary under the annuity plan of Imperial Oil, Ltd., and entitled to receive an annual pension of $25,031.00, Canadian funds. In his income tax returns for the years 1944 and 1945 decedent reported as income from Imperial Oil Pension Fund the pension received by him in those years in the respective sums of $22,420.68 and $22,507.61, United States funds. The compensation decedent received as an employee of Andian from January 1, 1926 through February 28, 1939, was included in computing the pension paid to him after his retirement, which compensation was for personal services performed without the United States. The period of decedent's employment from January 1, 1912 to January 1, 1926 was also included in the computation of the pension to which decedent was entitled.

The petitioner contends that the proportion of the pension paid to him in each taxable year which is attributable to the compensation he received from Andian during the period of his residence in Canada should be excluded from gross income under the provisions of section 116(a)(2) of the Internal Revenue Code.

It is the position of the respondent that since the decedent was a resident of the United States for both taxable years involved herein, the pension payments received by him in those years are taxable income in their entirety. Respondent maintains that the exemption granted in section 116 (a) (2) applies *only* to the year of the change of residence from the foreign country back to the United States and that in all later years pension payments or any other income are taxable in full to an individual, a resident of the United States in such years, regardless of the fact that they may be said to be attributable in part to the period of foreign residence, or constitute compensation for services rendered in foreign countries.

The subsection referred to and the ones preceding and following it are set out in the margin.[1]

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) [as amended by Sec. 148 (a) of the Revenue Act of 1942, c. 619, 56 Stat. 798, and Sec. 107 (b) of the Revenue Act of 1943, c. 63, 58 Stat. 21] EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—

(1) FOREIGN RESIDENT FOR ENTIRE TAXABLE YEAR.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire

When this proceeding was heard, at the end of March, it was apparently regarded as a case of first impression. But see *Herman Frederick Baehre*, 15 T. C. 236, 242, 243. In the meantime, however, on June 3, 1952, the Court of Claims handed down its decision in *Wood v. United States*, 104 F. Supp. 1020, which both parties accept as dealing with the same question. As petitioner says in its reply brief: "The *Wood* case is adverse to the contention of petitioner in the instant case to the extent that it holds that section 116 (a) (2) is applicable only to the year in which taxpayer changes his residence and is not applicable to a subsequent year." Its position, as we gather it, is that the *Wood* case was erroneously decided and that we are not bound by it.

While the latter statement may be technically correct, decisions of tribunals of the United States construing Federal taxing statutes should obviously attain as great a consistency as possible. It is highly unfortunate if two taxpayers, circumstanced identically and governed by the same legislation, are required to pay unequal exactions depending upon the court in which the proceeding happens to be decided. Unless *Wood* v. *United States* is clearly and demonstrably wrong, it should, as the leading case, accordingly be followed here.

We are not persuaded that the *Wood* case was incorrectly decided. Section 116 (a) (2) is not, as petitioner contends, free from ambiguity on its face. It does not state expressly the taxpayer's taxable years to which it is to be applied, and in this respect is clearly different from *Frances Bartow Farr, Executrix*, 33 B. T. A. 557. On the other hand, *Carl J. Batter*, 37 B. T. A. 667, also cited by petitioner declares the

taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3); but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

(2) TAXABLE YEAR OF CHANGE OF RESIDENCE TO UNITED STATES.—In the case of an individual citizen of the United States, who has been a bona fide resident of a foreign country or countries for a period of at least two years before the date on which he changes his residence from such country to the United States, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof), which are attributable to that part of such period of foreign residence before such date, if such amounts constitute earned income as defined in paragraph (3); but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

(3) DEFINITION OF EARNED INCOME.—For the purposes of this subsection, "earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income producing factors, under regulations prescribed by the Commissioner with the approval of the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 20 per centum of his share of the net profits of such trade or business, shall be considered as earned income.

\*      \*      \*      \*      \*      \*

principle that (p. 670) "Search should be made for an interpretation which will give full meaning, not only to the words used in the provision itself, *but to the words used in the title.*" [Emphasis added.] In the course of the discussion, the same opinion quotes as follows from *Ozawa* v. *United States*, 260 U. S. 178:

It is the duty of the court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail.

And the *Farr* case, *supra*, 564, itself recognizes that "The heading of a section may be considered as an aid to the interpretation of the text, when the text is ambiguous * * *." The title of section 116 (a) (2) clears up the ambiguity and expressly limits the scope of the sub-section to the "year of change of residence."

If that were not sufficient, resort to the legislative history would confirm that conclusion. S. Rept. 1631, 77th Cong., 2d Sess., 1942–2 C. B. 504, 549, describes the section as providing "that if such citizens establish that they are bona fide residents of a foreign country during the entire taxable year, their earned income from sources without the United States will be exempt. If they have been residents of a foreign country for two years or more, this same treatment will be accorded them *for the year in which they return to the United States.*" [Emphasis added.]

Nor do the other portions of the Committee reports, and respondent's regulations, referring to "earned income from sources without the United States *derived* during the period of his foreign residence * * *," [emphasis added] lead to a different result. See e. g., Regulations 111, section 29.116–1. Bearing in mind the special sense in which the word "derived" [2] is employed in *Eisner* v. *Macomber*, 252 U. S. 189, as including the concept of actual receipt (or possibly accrual), we think it unreasonable that the intention of Congress thus manifested was to do more than grant a cash basis taxpayer "this same treatment" in the year of change of residence, permitting the exclusion during that year of funds earned—and also received—during the period of residence abroad.

---

[2] "* * * *'Derived-from-capital'*; 'the *gain-derived-from-capital*,' etc. Here we have the essential matter: *not* a gain *accruing* to capital; not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital, however invested or employed, and *coming in,* being *'derived'*—that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal—*that is* income derived from property. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the Sixteenth Amendment—'incomes, *from* whatever *source derived*'—the essential thought being expressed with a conciseness and lucidity entirely in harmony with the form and style of the Constitution." (Emphasis as in original.) *Eisner* v. *Macomber, supra,* 207–208.

There being·so much to reinforce it, we are entirely unwilling to ignore the *Wood* case as a precedent. Without being required to consider what result would otherwise have been reached, it suffices to sustain the deficiency on its authority.

Reviewed by the Court.

*Decision will be entered under Rule 50.*